CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

3/13/2018
JULIA C. DUDLEY, CLERK
BY: s/ CARMEN AMOS
          DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION**

| | | |
|---|---|---|
| **HEIDI M. PARKER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 6:16-cv-58** |
| | ) | |
| **COMMISSIONER OF SOCIAL SECURITY,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

Plaintiff Heidi M. Parker ("Parker"), proceeding *pro se*, challenges the final decision of the Commissioner of Social security ("Commissioner") determining that she was not disabled and therefore not eligible for supplemental security income ("SSI") and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f, Parker asserts that her mental limitations prevent her from holding a job and that the ALJ should rely on the testing performed by Licensed Professional Counselor Lin Shaner and not rely on the other medical opinions in the case.[1] Dkt. Nos. 14, 18, 19 & 20. I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **GRANT** the Commissioner's Motion for Summary Judgment. Dkt. No. 16.

**STANDARD OF REVIEW**

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Parker failed to demonstrate that she was disabled

---

[1] Neither Parker nor the Commissioner requested oral argument in this case. To the extent Parker's brief can be construed as requesting oral argument, I find that a hearing will not aid in the decisional process and is thus unnecessary.

under the Act.[2]  Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001).  "Substantial evidence is

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it

consists of more than a mere scintilla of evidence but may be somewhat less than a

preponderance."  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and

alterations omitted).  The final decision of the Commissioner will be affirmed where substantial

evidence supports the decision.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## <u>CLAIM HISTORY</u>

This is Parker's second application for DIB benefits and fourth application for SSI

benefits. R. 12.  Parker unsuccessfully filed for SSI benefits in 1983, 2003, and 2004. Id. She

filed her first application for DIB benefits on October 9, 2009, claiming that her disability began

on September 1, 2009.  R. 45.  ALJ Thomas R. King entered a decision on June 10, 2011,

denying Parker's application for benefits and finding that Parker suffered from the severe

impairments of anxiety disorder and affective disorder, but was capable of performing light work

with simple, unskilled tasks and no exposure to working with the public. R. 51. ALJ King

determined that Parker was unable to perform her past relevant work of pet store cleaner, fast

food worker and cook, but that she could perform jobs that exist in the national economy such as

cleaner and packer. R. 55.

---

[2] The Act deems a person disabled for SSI purposes "if he is unable to engage in any substantial gainful
activity by reason of any medically determinable physical or mental impairment, which can be expected to result in
death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42
U.S.C. § 1382c(a)(3)(A). Disability under the Act requires showing more than the fact that the claimant suffers from
an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must
show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age,
education, and work experience. See 42 U.S.C. § 1382c(a)(3)(B).

Parker filed her current claims for DIB and SSI in October 2012, again claiming that her disability began on September 1, 2009.[3] R. 151–167.  The Commissioner denied the applications at the initial and reconsideration levels of administrative review. R. 61–68, 79–88.  On April 16, 2015, ALJ Brian P. Kilbane held a hearing to consider Parker's disability claim. R. 28–41. Parker participated in the hearing *pro se*. Id.

On May 28, 2015, ALJ Kilbane entered his decision analyzing Parker's claim under the familiar five-step process[4] and denying her claim for benefits. R. 12–21.  The ALJ found that Parker suffered from medically determinable impairments of depression and hypercholesterolemia, but that those impairments were not severe. R. 15–20.  The ALJ determined that Parker had no severe impairments and thus had not been under a disability as defined by the Act from September 1, 2009 through May 28, 2015. R. 20. On August 31, 2016, the Appeals Council denied Parker's request for review (R. 1–3), and this appeal followed.

## ANALYSIS

On appeal, Parker, acting *pro se*, filed letters alleging that her depression, and bipolar and schizophrenic behavior prevent her from holding a job, and that the ALJ should rely upon the consultative opinion of LPC Lin Shaner dated December 3, 2009. Dkt. Nos. 14, 19, 20.  I

---

[3] Parker's current application seeks benefits for the period of September 9, 2009 through June 10, 2011, which was previously denied by ALJ King. Thus, ALJ Brian P. Kilbane determined that Parker's current application is barred by *res judicata* as to the time period before June 11, 2011. R. 12. ALJ Kilbane's decision pertains only to the period beginning June 11, 2011 through May 28, 2015. R. 12–13.

[4] The Commissioner uses a five-step process to evaluate a disability claim.  Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002).  The Commissioner asks, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to her past relevant work; and if not, (5) whether she can perform other work.  Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520);  Heckler v. Campbell, 461 U.S. 458, 460–62 (1983).  The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability.  The burden shifts to the Commissioner at step five to establish that the claimant maintains the residual functioning capacity, considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

liberally construe her brief to argue that the ALJ's decision is not supported by substantial evidence, and that the ALJ erred by giving little weight to LPC Shaner's opinion. For the reasons that follow, I conclude that substantial evidence supports the ALJ's conclusion that Parker's impairments are not severe and that the ALJ properly considered LPC Shaner's opinion.

**<u>Severe Impairments</u>**

Parker has a history of schizoaffective disorder and paranoid and depressive personality traits. In Parker's previous application for benefits, covering September 2009 through June 2011, ALJ King found that Parker suffered from the severe impairments of anxiety disorder and affective disorder. R. 47. ALJ King reviewed Parker's medical and mental health treatment and testimony as to her daily functioning and noted that she received little medical treatment, had not been treated by a mental health specialist and that Celexa was beneficial for her mood swings and stress. R. 53. ALJ King noted that Parker did not have a mental disorder that needs frequent monitoring and suggested a referral to the Department of Rehabilitative Services for a socialization program and job placement. <u>Id.</u> ALJ King found that Parker's limitations were not totally debilitating because she shops, performs some household chores, spends time on the computer and has a website and drives. <u>Id.</u>

On December 3, 2009, LPC Shaner examined Parker and completed a psychological evaluation. LPC Shaner determined that Parker has low average cognitive ability and low average academic skills but that "her emotional functioning is such that she will have a great deal of difficulty maintaining employment." R. 241. LPC Shaner found that Parker had a paranoid mindset, but that there are "pieces missing," and " [i]n order to truly understand her situation, previous records or information from family members would be necessary to fill in the gaps." R. 242. LPC Shaner recommended counseling and medication management, and again noted

4

that "there are so many pieces missing that it's difficult to accurately pinpoint the problem." LPC Shaner concluded, "it seems safe to say that Mrs. Parker cannot work at this time and will be unable to work unless the paranoia can be ameliorated to some degree." Id.

ALJ King considered LPC Shaner's opinion and gave it no weight because it conflicted with Parker's treatment records and her daily activities. R. 54. ALJ King also considered a psychological consultative evaluation by David S. Leen, Ph.D., completed in March 2010. R. 49. Dr. Leen concluded that Parker suffered from anxiety disorder with post-traumatic stress disorder features, dysthymic disorder and phonological disorder. Id. He recommended psychiatric treatment to address Parker's anxiety and depressive symptoms. Dr. Leen concluded that Parker is unable to perform complex or challenging work activities with or without supervision, but can consistently perform relatively simple and repetitive work activities in a timely and appropriate manner, maintain reliable attendance in the workplace, accept instructions from supervisors and deal appropriately with coworkers and the public on a continuous basis, complete a normal workweek without interruptions from her mental impairments and can deal with the usual stressors of competitive work. Id.

State agency physician Julie Jennings reviewed Parker's file in June 2010 and determined that Parker suffered from the severe impairments of affective disorder and anxiety disorder that would impose mild restrictions on her activities of daily living, moderate limitations in social functioning, mild difficulties in maintaining concentration, persistence or pace, and moderate limitations in the ability to understand, remember and complete detailed instructions, maintain attention and concentration for extended periods, work in coordination with others without being distracted, complete a normal workday without interruptions from her mental impairments, perform at a consistent pace without an unreasonable number and length of rest periods and

respond appropriately to criticism from supervisors. R. 50. Considering all of the evidence in the record, ALJ King determined that Parker was capable of performing light work with simple, unskilled tasks and no exposure to working with the public. R. 51.

In Parker's current appeal, ALJ Kilbane considered Parker's treatment records beginning in June 11, 2011, her testimony at the April 2015 administrative hearing, and the opinions of consultative and reviewing physicians and determined that Parker did not suffer from any severe mental impairments for the period of June 11, 2011 through May 28, 2015.

With regard to Parker's treatment records, Parker visited the Free Clinic of Central Virginia on June 7, 2011, and reported that Celexa was working well and she did not have any side effects. R. 252. The provider prescribed diet counseling and noted concern about Parker's high cholesterol. Id. On January 23, 2012, Parker reported that she had run out of Celexa and was "not sure" if it is helping as she feels well, denies problems sleeping or appetite changes. R. 250. Parker stated that she "thinks it does make her feel better," and thought "it might help in [her] disability case," so she wished to continue it. Id. Parker did not wish to see anyone in mental health and did not feel that she required counseling. Id. She indicated that she was busy trying to set up a flea market business online and denied tearfulness, mood swings or sad thoughts while on Celexa. Id.

On August 23, 2012, Parker visited the Free Clinic and requested "mental help." R. 248. She reported being frustrated with the mental health system but denied suicidal/homicidal ideation. R. 248. On September 25, 2012, Parker reported that she restarted Celexa and it "doesn't work." R. 247. On November 1, 2012, Parker stated that the "citalopram" helped her depression, she felt well. R. 245. Parker returned to the Free Clinic on May 30, 2013, and reported that her stress level was high and she didn't feel that Celexa was working well. R. 280.

The provider indicated that Parker would have to talk to a counselor prior to increasing her Celexa. Id. On June 3, 2013, Parker was referred to counseling for depression based upon her high stress level. R. 287.

On July 8, 2013, Parker met with Cheryl Mayo, Licensed Clinical Social Worker ("LCSW") and reported increased stress because she could not get disability. R. 291. She completed a Beck Depression Inventory. She reported that she did not feel sad and could concentrate as well as ever. R. 292–93. On examination, Parker's affect was normal, she was fully oriented, with poor insight, but fair judgment and intact memory. R. 291. Ms. Mayo found that Parker did not present as depressed or highly anxious, but likely had a diagnosis on Axis II but not on Axis I.[5] Id. Ms. Mayo recommended continuing Celexa at current strength. Id.

State agency psychologists Howard S. Leizer, Ph.D. and Alan D. Entin, Ph.D., reviewed Parker's records in January 2013 and September 2013, and determined that she did not have a severe mental impairment. R. 73–74, 85–86. ALJ Kilbane also reviewed the December 3, 2009 report of LPC Shaner and gave it little weight due to Shaner's note that she did not have the full picture regarding Parker. R. 18–19. ALJ Kilbane found that LPC Shaner's opinion was speculative and based upon Parker's subjective report. Id.

ALJ Kilbane reviewed the prior decision by ALJ King, finding Parker capable of light work with simple, unskilled tasks and no exposure to working with the public. R. 19. ALJ Kilbane gave ALJ King's opinion little weight, finding that more recent evidence does not support any exertional limitations or severe mental impairments. Id.

During the April 2015 administrative hearing, Parker testified that she suffers from mental limitations, but has no physical impairments. R. 32. Parker testified that when she tries to

---

[5] The Diagnostic and Statistical Manual of Mental Disorder (DSM) classifies clinical disorders on Axis I and personality disorders on Axis II. https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3081882/

work she can't hold herself together, and breaks out crying and shaking. Id.  Parker also testified that she performs housework, cooks, performs laundry, vacuums, and shops for groceries.  R. 34. She visits with friends and family, and is involved in online ministry for Jesus Christ. She is able to take care of all of her personal needs and has no difficulty getting along with her family, friends or neighbors. R. 35.  Parker reported doing missionary work online approximately eight hours a day, five days a week. R. 36.  She attends church every Sunday. R. 37.  Parker relied upon the opinion of LPC Shaner to support her claim that she is unable to work due to mental limitations. R. 37–38.

An impairment is non-severe when it causes no significant limitations in the claimant's ability to work. 20 C.F.R. §§ 404.1521(a), 416.921(a). "[A]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (citing Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984)). Additionally, an impairment must last, or be expected to last for a continuous period of at least 12 months to be considered "severe." 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).  Parker bears the burden of proving that her impairments are severe. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

"Mental impairments require a distinct analysis under Social Security regulations." Gunnoe v. Colvin, No. 2:15-CV-12145, 2016 WL 5346956, at *3 (S.D.W. Va. Sept. 23, 2016) (citing 20 C.F.R. § 404.1569a). In order to assess the severity of mental impairments at the second step of the sequential process, the ALJ must use a "special technique." Id. Under this technique, the ALJ first determines if the claimant has a medically determinable mental impairment and then, if one exists, the ALJ documents his or her findings and rates the degree of

functional limitation resulting from the impairment according to criteria specified in 20 C.F.R. §§ 404.1520a(a)–(c), 416.920a(a)–(c). After rating the degree of functional limitation from the claimant's impairment(s), the ALJ determines the severity of the limitation; a rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning, and concentration, persistence or pace) and "none" in the fourth (episodes of decompensation of extended duration) will result in a finding that the impairment is not severe unless the evidence indicates that there is more than minimal limitation in the claimant's ability to do basic work activities. Id.; 20 C.F.R. §§ 404.1520a(d), 416.920a(d).

Here, substantial evidence supports the ALJ's conclusion that Parker's mental impairments were non-severe . In his opinion, ALJ Kilbane provided a detailed history of Parker's medical treatment, as well as her testimony at the administrative hearing. R. 16–20. He concluded that Parker's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible because they lack support and consistence with other evidence of record. R. 17, 18. ALJ Kilbane explained:

> The claimant has not generally received the type of medical treatment one would expect for a totally disabled individual. She was treated solely with medications, which appear to have been generally effective in controlling her mental impairments. She did not require any hospitalizations, emergency department visits, or even frequent physician intervention during the period at issue. Despite alleging significant functional limitations, there were limited abnormalities in her objective medical findings. In January 2012, the claimant opted to continue taking Celexa because she thought 'it might help in my disability case." She did not wish to see anyone in mental health and did not feel she required any counseling. She stated she got along well with her husband and children and was busy trying to set up a flea-market business online. She denied mood swings or sad thoughts while on Celexa. On examination, she was cheerful and chatted easily. The provider indicated her depression was controlled. Her testimony generally did not match her treatment records. At her most recent examination the claimant did not present as depressed or highly anxious and the license[d] clinical social worker who examined the claimant indicated that the claimant had only a possible Axis II diagnosis and no Axis I diagnosis. She recommended the claimant stay on the same dosage of Celexa, or even discontinue it altogether. At

the hearing the claimant testified that she spends roughly 8 hours a day, 5 days a week engaged in online ministry work. She also testified to a wide range of daily activities. This level of activity is inconsistent with total debility and indicates that she does not have any physical or mental limitations that significantly limit her ability to do basic work activities. The limited degree of treatment required and relatively benign examinations during the period at issue belie allegations of disabling symptoms or functional limitations and support a finding that the claimant does not have any severe impairments.

R. 18.

Given the evidence in the record, ALJ Kilbane applied the special technique set forth in the regulations and determined that Parker has no limitation in activities of daily living because she reported doing online ministry, spending time with her family, caring for pets and people in her household, doing basic home cooking and normal household chores. R. 19–20. Parker denied needing help or encouragement to do those activities, and denied needing reminders to take care of her personal needs, grooming or take her medication. Id. ALJ Kilbane determined that Parker has no limitation in social functioning, as she reported grocery shopping, ministering to others online daily, spending time with others weekly in religious activities, participating in religious activities, family activities and spending time with her spouse. R. 20. Parker indicated no problem getting along with family, friends or neighbors, but reported that her impairments affected her ability to get along with others. Id. ALJ Kilbane determined that Parker had no limitation with concentration, persistence or pace as she indicated that she could pay bills, count change, handle a savings account, and use a checkbook. Id. Parker denied needing reminders to go places, and indicated that she could pay attention for 30 minutes, finish what she started, and follow written and spoken instructions. Id. Finally, the ALJ determined that Parker had no episodes of decompensation of extended duration in the record. Id. Thus, under the special technique, Parker had no limitations in the functional areas, which results in a finding that her mental impairments are not severe.

Parker simply has not met her burden of establishing that her impairments are severe, including the requirement that an impairment be expected to last for at least 12 months. See 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).  In this appeal, Parker has not identified any medical records or opinions that the ALJ failed to consider, but rather asks the court to reweigh the evidence, which I am not permitted to do.  Thus, the ALJ's step two analysis is supported by substantial evidence and should not be disturbed.

### Consultative Physician's Opinion

Parker also asserts that LPC Shaner's opinion should have been given more weight. Dkt. Nos. 14, 19 & 20.  The regulations require that the opinion of a consultative examining source should generally receive greater weight than a non-examining source. 20 CFR §§ 404.1527(c)(1), 404.1527(c)(2); Taylor v. Colvin, No. 7:13CV00536, 2014 WL 4385796, at *4 (W.D. Va. Sep. 4, 2014). In evaluating the weight to give the opinion of a consulting examiner, the ALJ must consider various factors, including the explanation and support for the opinion, as well as its consistency with the record as a whole. 20 C.F.R. §§ 404.1527(c), 416.927(c).

Here, the ALJ considered LPC Shaner's opinion, but noted that LPC Shaner acknowledged that she did not have the full picture regarding Parker and that many of the limitations she notes are phrased in a speculative manner. R. 19.  Indeed, LPC Shaner noted that "there are so many pieces missing that it's difficult to accurately pinpoint the problem."  R. 242. LPC Shaner also phrased many of her findings in speculative terms, such as: "it seems safe to say that Mrs. Parker cannot work at this time…;" "she is likely to become very anxious, confused and disoriented…;" "[o]ccupations where she has to concentrate and focus are likely to be difficult;" "employment does not seem to be an option yet." R. 242–43.  Additionally, LPC

Shaner's opinion that Parker is incapable of working conflicts with the mild findings in Parker's treatment records, her reports of daily activities and the opinions of the state agency physicians. Thus, substantial evidence supports ALJ Kilbane's decision to give LPC Shaner's opinion little weight.

## CONCLUSION

In this action, the court's role is limited to determining whether the Commissioner's decision is supported by substantial evidence. In this case, substantial evidence supports ALJ Kilbane's opinion. In affirming the final decision of the Commissioner, I do not suggest that Parker is totally free from pain and distress. The objective medical record simply fails to document during the relevant period the existence of conditions that would reasonably be expected to result in total disability from all forms of substantial gainful employment. It appears that the ALJ properly considered all of the objective and subjective evidence in adjudicating Parker's claim for benefits and in determining that her mental impairments were not severe. Accordingly, I **AFFIRM** the final decision of the Commissioner, **GRANT** summary judgment to the defendant, and **DISMISS** this case from the court's docket.

Enter: March 13, 2018

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge